**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SANDY SMITH and KATHLEEN MAXSON,**<br>**on behalf of themselves and all others**<br>**similarly situated,**<br><br>      **Plaintiffs,**<br><br>            **v.**<br><br>**MERIAL LIMITED,**<br><br>      **Defendant.** | **Civ. No. 10-439**<br><br>**OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendant Merial Limited's ("Merial")

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  There was no

oral argument.  Fed. R. Civ. P. 78.  For the reasons stated below, Defendant's motion to

dismiss is **GRANTED** in part and **DENIED** in part.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs' Amended Complaint ("Complaint") brings a putative class action on

behalf of themselves and other purchasers and users of "spot on" flea and tick treatments

manufactured by Defendant.  Defendant Merial manufactures Frontline and Frontline

Plus (together, "Frontline"), which are flea and tick control pesticide products containing

the active ingredients finopril and methoprene.  (Compl. ¶ 4.)  Frontline is considered a

1

"spot on" flea and tick treatment because the pesticide is applied directly to one or more localized areas on the body of the pet.  (*See* Compl., Ex. D.)

On April 21, 2009, the Environmental Protection Agency ("EPA"), which regulates the safety of pesticides, issued a press release, reporting a "recent sharp increase in the number of incidents being reported from the use of spot-on pesticide products for flea and tick control for pets." (Compl., Ex. D.)  In response, Merial issued a statement on April 22, 2009, addressing the EPA's concern and concluding, "[p]et owners can continue to trust FRONTLINE products for long-lasting and effective flea and tick control."  (Compl., Ex. E.)  Merial also issued a similar letter to veterinarians.  (*See* Compl., Ex. F.)

Plaintiffs allege that Frontline is unsafe because it caused skin irritation and neurological problems for their pets.  (Compl. ¶ 7.)  Plaintiff Sandy Smith, a resident of Tennessee, alleges that on or about 2007 she used Frontline on her two dogs and noticed that after each application, the dogs exhibited "seizure-like symptoms."  (Compl. ¶¶ 32-33.)  Plaintiff Kathleen Maxson, a resident of New Jersey, alleges that on November 28, 2009, she purchased and treated her cat once with Frontline, after which the cat "began to convulse and died."  (Compl. ¶¶ 34-36.)

Plaintiffs, on behalf of themselves and other purchasers of Defendant's products, bring the following causes of action: (1) breach of express warranty (Count One); (2) breach of implied warranty of merchantability (Count Two); (3) unjust enrichment (Count Three); and (4) violation of the New Jersey Consumer Fraud Act ("NJCFA")

(Count Four). Specifically, Plaintiffs seek economic damages based upon the difference between the amount they paid for the product and the diminished (or nonexistent) value of the product as a result of it being unsafe to apply to their pets.[1]

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[2] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).   Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

---

[1] In addition to this action, multiple putative class actions have been filed against various other "spot on" flea and tick treatment manufacturers in this Court.  The Court has issued parallel opinions on the pending motions to dismiss in the following flea and tick treatment cases: *McDonough v. Bayer Healthcare,* Civ. No. 10-442; *Arlandson v. Hartz Mountain Corp.*, Civ. No. 10-1050; *Snyder v. Farnam Companies*, Civ. No. 10-1391; and *Johansson v. Central Garden and Pet Company*, Civ. No. 10-6372.

[2] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

### B.    Choice of Law Principles

Since Plaintiffs' claims are all based on state law, at the outset the Court must determine which law to apply to Plaintiffs' claims. New Jersey's choice of law rules apply, as a federal court sitting in diversity must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 383 U.S. 487, 496 (1941). New Jersey has adopted the "most significant relationship" test of the Restatement of Conflict of Laws.

4

*P. V. v. Camp Jaycee*, 197 N.J. 132, 142-43, 962 A.2d 453 (2008).[3]  This analysis, which

must be performed on an issue-by-issue basis, is a two-step process.  *Id.* at 143.  The first

step is to determine whether an actual conflict of law exists, for if no conflict exists, the

law of the forum state applies.  *Id.*  Second, if a conflict does exist, the Court must

determine which state has the "most significant relationship" to the claim, by "weigh[ing]

the factors set forth in the Restatement section corresponding to the plaintiff's cause of

action."  *Nikolin v. Samsung Elecs. Am., Inc.*, Civ. No. 10-1456, 2010 U.S. Dist. LEXIS

110942, at *9 (D.N.J. Oct. 18, 2010).

Plaintiffs argue that it is premature to conduct a proper choice of law analysis, as

the Court does not yet have a full factual record.  Due to the factual inquiry that may be

necessary to properly weigh the Restatement factors, "it can be inappropriate or

impossible for a court to conduct that analysis at the motion to dismiss stage when little

or no discovery has taken place."  *In re Samsung DLP Television Class Action Litigation*,

Civ. No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009).  However, "[s]ome

choice of law issues may not require a full factual record and may be amenable to

resolution on a motion to dismiss."  *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp.

2d 486, 491 (D.N.J. 2009).  As such, courts in this Circuit have sometimes determined

that the choice of law analysis in a putative class action can be done at the motion to

dismiss stage.  *See, e.g., Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255

---

[3] Until the New Jersey Supreme Court's decision in *Camp Jaycee*, New Jersey used the "governmental interest" analysis.  The "most significant relationship" test now used "embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration."  *Camp Jaycee*, 197 N.J. at 142 n.4.

n.5 (3d Cir. 2010); *Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.,* Civ. No. 08-5380, 2010 U.S. Dist. LEXIS 34584, at *2 (D.N.J. Apr. 8, 2010); *Knox v. Samsung Electronics America, Inc.*, Civ. No. 08-4308, 2009 U.S. Dist. LEXIS 53685, at *2 (D.N.J. June 25, 2009). Other times, however, Courts in this District have deferred the choice of law analysis until the class certification stage. *See Harper*, 595 F. Supp. 2d at 490-91; *In re Samsung*, 2009 WL 3584352, at *3; *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004); *In re Hypodermic Products Antitrust Litig.*, Civ. No. 05-1602, 2007 U.S. Dist. LEXIS 47438, at *16 (D.N.J. June 29, 2007).

In order to decide whether choice of law analysis is appropriate at the motion to dismiss stage in this particular case, the Court will follow the guidance provided in *Harper*, and determine whether the choice of law issues "require a full factual record" or not. 595 F. Supp. 2d at 491. Since choice of law analysis must be undertaken on an issue-by-issue basis, the Court will also determine whether or not to defer its choice of law decision on an issue-by-issue basis. The factual record available at this time may be full enough for certain choice of law determinations but not for others. Therefore, New Jersey's choice of law analysis will be addressed for each issue, and should the choice of law determination for that issue require a fuller factual record, the Court will defer its decision until such factual record is available.

> **C.     Counts Two, Three and Four – Breach of Implied Warranty, Unjust Enrichment and Violation of the NJCFA**

Defendant argues that Plaintiffs' theories of breach of implied warranty, unjust enrichment, and consumer fraud are not independently actionable, as under New Jersey law, claims arising from harm caused by products can only be asserted under the NJPLA. Furthermore, Defendant contends that even if Tennessee law applies to Plaintiff Sandy Smith's claims, these claims would still be subsumed under the Tennessee Product Liability Act ("TPLA").

### 1.    Choice of Law

The choice of law analysis here is straight forward.  First, under the applicable Restatement provision, the state where the injury occurs is presumed to govern, unless some other state can be shown to have a more significant relationship.  Restatement (Second) of Conflict of Laws, § 147.  Second, Plaintiffs themselves state in their opposition brief that "if Plaintiffs were actually asserting product liability claims, the NJPLA would apply only to the claims of New Jersey plaintiffs," as "the law of the state where the plaintiff was injured generally governs product liability claims."  (Pls.' Opp. Br. at 9 n.3.)  While Plaintiffs may challenge whether the applicable product liability acts subsume their claims, they have not challenged the applicability of the law of the state where the plaintiff was injured to product liability issues.  Since Plaintiffs and Defendant are in agreement, there is no real choice of law issue present here, and the Court will apply the law of each Plaintiff's home state.[4]

---

[4] Since the class has yet to be certified, only the law of each of the named Plaintiffs' home states will be addressed.  *See Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 659 (3d Cir. 1998) (stating that "[u]ntil the putative class is certified, the action is one between

### 2. Subsumption of Counts Two, Three and Four Under the NJPLA and the TPLA

Since the product liability law of each Plaintiff's home state governs, the NJPLA applies to Plaintiff Kathy Maxson's claims. The NJPLA governs any "product liability action," which is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(3). "Harm" is defined in the statute as, "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J. Stat. Ann. § 2A:58C-1(b)(2). Thus, the Third Circuit has determined that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). If any of Plaintiff Kathy Maxson's claims constitute a "product liability claim," they will be subsumed under the NJPLA.

Plaintiffs attempt to classify their claims as non-product liability claims by alleging only economic damages related to the price of the product as opposed to damages related to the harm caused by the product. However, "[l]imiting a claim to economic injury and the remedy sought to economic loss cannot be used to obviate the

the [named plaintiffs] and the defendants. Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs.")

PLA." *Vercelleno v. Gerber Prods. Co.*, Civ. No. 09-2350, 2010 U.S. Dist. LEXIS 9477, at \*20 (D.N.J. Feb. 3, 2010). The New Jersey Supreme Court has expressly held that "[t]he language of the PLA represents a clear legislative intent that…the PLA is paramount when the underlying claim is one for harm caused by a product." *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 66 (N.J. 2008). As such, regardless of how a claim is pleaded, where the *core issue* is the harmfulness of the product's chemicals, the claim must be pleaded as an NJPLA claim. *Crouch v. Johnson & Johnson*, Civ. No. 09-2905, 2010 WL 1530152, at \*7 (D.N.J. Apr. 15, 2010).

Though Plaintiffs assert contract, quasi-contract, and consumer fraud claims, the core issue underlying Plaintiffs' claims is that the chemicals in Frontline products are dangerous and caused physical damage to Plaintiffs' property, in the form of harm to their pets' health. *See Harabes v. The Barkery, Inc.*, 791 A.2d 1142, 1144 (N.J. Super. Ct. Law Div. 2001) (classifying pets as personal property). This fits squarely within the NJPLA's definition of "harm" as "physical damage to property." N.J. Stat. Ann. § 2A:58C-1(b)(2)(a).

While Plaintiffs point to the New Jersey Appellate Division case *Wendling v. Pfizer, Inc.*, No. L-348-04, 2008 WL 8333549 (N.J. App. Div. Mar. 31, 2008), to support their position, the facts of *Wendling* are distinguishable. In *Wendling*, the plaintiffs brought a claim under the NJCFA that a product claiming to control tapeworms in horses failed to do so, causing harm to the plaintiffs' horses from tapeworms that were insufficiently treated. The Appellate Division found that the plaintiffs' claim was not

subsumed by the NJPLA because in *Wendling*, "it was not the product itself that caused

the harm, but allegedly its misleading promotion." *Wendling*, 2008 WL 8333549, at \*8.

Here, Plaintiffs are not alleging that Defendant's products failed to kill fleas and ticks,

causing harm to Plaintiffs' pets because the fleas and ticks went untreated. Instead,

Plaintiffs are alleging that the product is unusable as it harmed their pets in the process of

successfully killing the fleas and ticks as promised. Simply "articulating a claim in terms

of pure economic harm where the core issue is the potential injury arising as a

consequence of the products' allegedly harmful chemicals" does not obviate the NJPLA's

reach. *Vercelleno*, 2010 U.S. Dist. LEXIS 9477, at \*20.[5] Therefore, Plaintiff Kathy

Maxson's breach of implied warranty, unjust enrichment and consumer fraud claims are

subsumed under the NJPLA, as "irrespective of the theory underlying the claim," the core

issue in Plaintiffs' claims is "harm caused by a product." N.J. Stat. Ann. § 2A:58C-

1(b)(3).

Plaintiff Sandy Smith's breach of implied warranty, unjust enrichment and

consumer fraud claims are similarly subsumed under the TPLA. The TPLA "includes all

actions brought for or on account of personal injury, death, or property damage caused by

---

[5] Plaintiffs attempt to distinguish *Vercelleno*, as well as various other cases finding subsumption by the NJPLA, based on reasoning provided in dicta in another decision that the NJPLA does not subsume claims where a breach of express warranty has been alleged and an NJPLA claim has not. *See In re Ford Motor Co. E-350 Van Products,* Civ. No. 03-4558, 2008 U.S. Dist. LEXIS 73690, \*48 n.9 (D.N.J. Sept. 3, 2008). This Court disagrees with this reasoning, as no such proposition stems from the NJPLA or from the New Jersey Supreme Court's instructive decision in *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51 (N.J. 2008). While the NJPLA does expressly exempt breach of express warranty claims, the presence or absence of either a breach of express warranty claim or an NJPLA claim does not affect the analysis of Plaintiffs' other claims.

or resulting from the manufacture, construction, design, formula, preparation, assembly,

testing, service, warning, instruction, marketing, packaging, or labeling of any product."

Tenn. Code Ann. § 29-28-102(6).  The TPLA specifically includes in its purview claims

for "breach of or failure to discharge a duty to warn or instruct," "breach of warranty,

express or implied," and "any other substantive legal theory in tort or contract

whatsoever."  *Id.*  The language of the TPLA is at least as broad, if not broader, than the

NJPLA.  Therefore, both Plaintiffs fail to state a claim in Counts Two, Three and Four,

for these claims must instead be brought as products liability claims as mandated by the

NJPLA and the TPLA.  While these claims fail as pleaded, the Court is making no

determination at this juncture as to whether Plaintiffs can successfully state a claim under

the requisite product liability statutes.  As such, the Court will dismiss these claims, but

will allow Plaintiffs the opportunity to amend the Complaint to plead them as product

liability causes of action instead.

### D.    Count One – Breach of Express Warranty

Since claims for breach of express warranty are expressly preserved by the

NJPLA, Count One is not subsumed.[6]  Defendant contends that Count One still fails to

state a claim, however, because Plaintiffs have failed to allege any express warranty that

was breached.  Even if the statements cited by Plaintiffs constitute express warranties that

were breached, Defendant further argues that the Count still fails to claim that they were

---

[6] Defendant does not address the application of the TPLA to Plaintiff Sandy Smith's breach of express warranty claim, therefore the Court will presume for the time being that Count One is not subsumed as to either named Plaintiff.

part of the "basis of the bargain" for the product.  *New Hope Pipe Liners, LLC v.*

*Composites One, LCC*, Civ. No. 09-3222, 2009 U.S. Dist. LEXIS 111217, at \*15 (D.N.J.

Nov. 25, 2009).

### 1.     Choice of Law

Under New Jersey's "most significant relationship" test, the first step is to

determine whether or not there is a true conflict between the laws.  If there is no conflict,

the law of the forum state applies.  Since there is no evident conflict between New Jersey

and Tennessee breach of express warranty law, Defendant does not contest Plaintiff's

contention that the law of the forum state, New Jersey, applies.[7]  (Def.'s Reply Br. at 9

n.6.)

### 2.     Breach of Express Warranty

Under New Jersey law, in order to state a claim for breach of express warranty,

Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or

description about the product; (2) that this affirmation, promise or description became

part of the basis of the bargain for the product; and (3) that the product ultimately did not

conform to the affirmation, promise or description.  *New Hope Pipe Liners*, 2009 U.S.

Dist. LEXIS 111217, at \*15; N.J. Stat. Ann. § 12A:2-313.  However, "an affirmation

merely of the value of the goods or a statement purporting to be merely the seller's

opinion or commendation of the goods does not create a warranty."  N.J. Stat. Ann. §

---

[7] The parties do not address the potential applicability of the law of Georgia, Defendant's principal place of business.  Therefore, Georgia law will not be included in the choice of law analysis at this time.  However, Defendant has expressly reserved its right to argue in future proceedings that another state's law applies.  (Def.'s Reply Br. at 9 n.6.)

12A:2-313(2).  Additionally, statements that are nothing more than mere puffery are not considered specific enough to create an express warranty.  *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Civ. No. 08-939, 2009 U.S. Dist. LEXIS 82833, at \*48-49 (D.N.J. Sept. 10, 2009) (dismissing a breach of warranty claim based on Defendant's statement that HD DVD Players were for "Today, Tomorrow, and Beyond," since the statement is just "puffery").  Finally, courts have noted that "whether a given statement constitutes an express warranty is normally a question of fact for the jury."  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. No. 03-4558, 2008 U.S. Dist. LEXIS 73690, at \*13 (D.N.J. Sept. 3, 2008); *see also Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645, 801 A.2d 361 (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact.").

Plaintiffs allege that Defendant made the following affirmations and promises:

(1)     A statement on Merial's website that "Merial is committed to developing pharmaceuticals…with the highest level of quality and safety."  (Compl. ¶ 4; Ex. A.)

(2)     A statement in a Frontline product insert under the heading, "PRECAUTIONARY STATEMENTS" and "HAZARDS TO DOMESTIC ANIMALS," which states, "[p]ets may experience some temporary irritation at the site of product application.  If signs persist, or become more severe within a few days of application, consult a veterinarian immediately.  If your pet has an unusual reaction to the initial application, consult a veterinarian before repeating treatment." (Compl. ¶ 8; Ex. B.)

(3)     A press release by Merial stating that, "[a]lthough the EPA has stated that it has noted a 'sharp increase' in the number of reported adverse events associated with the use of spot-on flea and tick control products, our records do not indicate that this is the case for FRONTLINE." (Compl. ¶ 28; Ex. E.)

(4)     A letter sent to veterinarians by Merial in the wake of the EPA's statements, stating that Frontline continues to offer the same "trusted, reliable protection."  (Compl. ¶ 28; Ex. F.)[8]

Defendant alleges that these statements do not constitute express warranties under New Jersey law.  The Court finds that, especially as to the statements made by Defendant in response to the EPA's April 21, 2009 press release, Plaintiffs' allegations identify specific affirmations or promises by Defendant that Frontline is safe to use on pets, and therefore survive a motion to dismiss.  *See, e.g., Knipe v. Smithkline Beecham*, 583 F. Supp. 2d 602, 625-626 (E.D. Pa. 2008) (holding that Plaintiffs' showing that Defendant asserted in "various articles, conferences and journals presented to the medical community" that Paxil is safe and effective for children to use was sufficient for Plaintiffs' breach of express warranty claim to survive a motion for summary judgment). At the motion to dismiss stage, it is enough that Plaintiffs provide more than "bald assertions," and identify specific affirmations by Defendant that could be found to constitute an express warranty.  *Compare In re Ford Motor Co. E-350 Van*, 2008 U.S.

---

[8] Plaintiffs also rely on a statement that appears on "PetDrugs.com," a website hosted by a third-party vendor located in Canada.  Since Plaintiffs do not allege that Merial was responsible for this statement, Merial cannot be held liable for the statement since it is by a third-party. Therefore, the PetDrugs.com statement will not be considered at this time.

14

Dist. LEXIS 73690, at *14-15 (finding that an allegation that Ford described a van as a "15-passenger" van survived a motion to dismiss, as such a statement could constitute an "objective representation warranting the van's design and safety"), *and Taylor v. JVC Ams. Corp.*, Civ. No. 07-4059, 2008 U.S. Dist. LEXIS 43215, at *15-16 (D.N.J. May 29, 2008) (allegation that television was sold as a "1080p" television but did not accept a 1080p signal found sufficient to survive motion to dismiss), *with Simmons v. Stryker Corp.*, Civ. No. 08-3451, 2008 U.S. Dist. LEXIS 93306, at *5 (D.N.J. Nov. 17, 2008) (dismissing a claim that was "devoid of any 'factual matter' to support the existence of an express warranty"), *and Parker v. Howmedica Osteonics Corp.*, Civ. No. 07-2400, 2008 U.S. Dist. LEXIS 2570, at *21 (D.N.J. Jan. 14, 2008) (general references to "press releases" and "assurances of safety," as opposed to specific statements, cannot survive a motion to dismiss), *and Heisner v. Genzyme Corp.*, No. 08-C-593, 2008 U.S. Dist. LEXIS 60569, at *24-25 (N.D.Ill., July 25, 2008) (claim dismissed where plaintiff failed to specify any particular affirmation or promise by defendant).

Defendant further contends that even if Plaintiffs have properly pleaded express warranties, they have failed to plead the "basis of the bargain" element of a breach of express warranty.  However, "[t]o establish a breach of an express warranty under N.J. Stat. § 12A:2-101, the plaintiff need not prove privity or traditional reliance." *Knipe*, 583 F. Supp. 2d at 625.  While some states require such elements, New Jersey's "basis of the bargain" requirement is much broader.  Plaintiffs must only show that the alleged express

15

warranties "were of a kind which naturally would induce the purchase." *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008).

Defendant claims that the Third Circuit further requires that a plaintiff prove he or she has "read, seen, or heard the advertisements at issue" to satisfy the "basis of the bargain" requirement. *Cipollone v. Liggett Group, Inc.,* 893 F.2d 541, 569 (3d Cir. 1990). However, the *Cipollone* decision is narrower than Defendant's interpretation. First, the Court in *Cipollone* pointed out that this additional burden on the plaintiff would not apply where a "written warranty delivered to the purchaser in connection with a sale" was at issue. *Cipollone*, 893 F.2d at 567 n.29. Here, one of the alleged warranties was included with the sale of the product, so that "there is no question that the plaintiff has knowledge that the alleged warranty exists." *Id.* Furthermore, the requirement established in *Cipollone* was in regard to what must be included in jury instructions at trial, not what must be pleaded to survive a motion to dismiss. *Id.* at 563-64. At this stage, it is sufficient that Plaintiff has pleaded alleged warranties that plausibly could have been the basis of the bargain. *See In re Ford Motor Co. E-350 Van*, 2008 U.S. Dist. LEXIS 73690 (holding that whether an alleged warranty was the basis of the bargain cannot be resolved on a motion to dismiss).

## E.    Preemption by FIFRA

Finally, Defendant contends that Plaintiffs' claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 ("FIFRA"), as Plaintiffs' claims for relief seek to alter Frontline's EPA-approved label and package insert. FIFRA

provides a comprehensive scheme for regulating labels used on pesticides such as

Frontline.  When a pesticide manufacturer applies to the EPA for registration of a

pesticide product, the manufacturer "must submit a proposed label to [the] EPA as well

as certain supporting data."  *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 438 (2005)

(citing 7 U.S.C. § 136a).  The EPA then determines what warnings or precautions must

appear on the product's label, and notifies the manufacturer of its labeling decision.  7

U.S.C. § 136a(c).  Under FIFRA, the EPA is essentially given full control to regulate

labels used on pesticides.  While state governments can regulate pesticide labeling in

conjunction with the federal government, they are expressly prohibited from "impos[ing]

or continu[ing] in effect any requirements for labeling or packaging in addition to or

different from" those established by the federal government.  7 U.S.C. § 136v(b).  This

includes "judge-made rules" in addition to statutes and regulations.  *Bates*, 544 U.S. at

443.  However, this preemption is limited in scope to judge-made requirements for

"labeling or packaging," where said requirements are more than is required under FIFRA.

*Id.* at 444.

The Supreme Court's decision in *Bates* instructs courts as to what types of claims

are preempted by FIFRA.  In *Bates*, the Supreme Court held that, "rules that require

manufacturers to design reasonably safe products, to use due care in conducting

appropriate testing of their products, to market products free of manufacturing defects,

and to honor their express warranties or other contractual commitments plainly do not

qualify as requirement for labeling or packaging."  544 U.S. at 444 (finding that the

petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty were not pre-empted).  The Supreme Court further explained that "the proper inquiry calls for an examination of the elements of the common-law duty at issue," not an examination of the potential effects of imposing those common law requirements.  *Id.* at 445.  The Third Circuit, in examining Congress's purpose in passing FIFRA, additionally explains that Congress meant only to provide uniformity in labeling, and did not intend "to regulate sales literature generally and the legal obligations that can arise therefrom."  *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 217 (3d Cir. 2010).

Plaintiffs' breach of express warranty claim is not preempted by FIFRA.  As explained above, "rules that require manufacturers to…honor their express warranties" are not preempted by FIFRA.  *Bates*, 544 U.S. at 444.  Furthermore, the Third Circuit has specifically held that FIFRA does not preempt claims based on breach of express warranty.  *See Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 490 (3d Cir. 2006) (holding that "FIFRA does not preempt claims based on theories of strict liability, negligent testing, and breach of express warranty").  Simply because success on a breach of express warranty claim may lead to a label change by Defendant does not mean the claim imposes a "requirement" within the meaning of FIFRA's preemption provision.  *Id.* As such, Plaintiffs' breach of express warranty claim remains.

## III.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** as to Counts Two, Three and Four, and Counts Two, Three and Four are **DISMISSED** as subsumed under the NJPLA and TPLA.  Defendant's motion to dismiss as to Count One is **DENIED**.  An Order follows this Opinion.

 s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 26, 2011**